Frank Kick v. Walter Franklin and Frank C. Nicodemus, Jr., Receivers of the Wabash Railway Company, Appellants.— 137 S. W. (2d) 512.

Division One, March 6, 1940.

*Homer Hall, Clark, Boggs, Peterson & Becker* and *Howard B. Lang, Jr.,* for appellants.

*Cowgill & Popham, Guy W. Green, Jr., Mosman, Rogers & Bell* and *Rubey M. Hulen* for respondent.

DOUGLAS, J.—This is an action for personal injuries received by respondent in a crossing collision between an automobile driven by him and a train operated by appellants. The collision occurred at a point where a public road crosses the Wabash tracks in Clay County about one mile west of Missouri City. For some distance east of this crossing the railroad runs along the base of a bluff about twenty-five or thirty feet high. There is a state highway running along the top of the bluff parallel with the railroad. The highway and the railroad run generally from east to west. From this highway there is a side road running south in a sharp descent down the side of the

bluff. Then it flattens out and crosses the railroad. Appellant was engaged in some revetment work on the Missouri River, south of the railroad. His home was in Missouri City. To reach his work he drove in his automobile west along the state highway, then turned south on the side road down the side of the bluff, over the tracks to the river. Early one morning the respondent was driving to work. He came down the side road. He stopped his automobile within approximately fifteen feet of the track. Some of respondent's evidence indicates the place he stopped might have been farther from the track. Not seeing any train he proceeded at a speed of two or three miles an hour to cross the track. He heard no warning and produced at the trial a number of witnesses who testified none was given. When on the track, his automobile was struck by the locomotive and he was injured. His companion riding with him was killed. Upon the trial below, the jury found for him for $30,000. This is the second appeal of this case. For a more complete statement of the facts the opinion written on the first appeal is referred to. [See Kick v. Franklin, 342 Mo. 715, 117 S. W. (2d) 284.] In that opinion, we held that the plaintiff had made, under the humanitarian doctrine, a submissible case because of defendants' negligence on the ground of failure to warn. But we reversed the judgment, then for $35,000, on the ground of error because the court also submitted the case to the jury on the charge of negligence in failing to slacken the speed of the train. Upon retrial the case was submitted solely on the failure to warn. Appellants claim such submission was error and that its demurrer at the close of the evidence should have been sustained.

Appellants base this contention, as they did on the former appeal, on the grounds that the plaintiff failed to prove that such failure to warn was the proximate cause of the injury. They contend that the court, without requiring precise proof of the necessary facts, erroneously took judicial knowledge of the fact that an effective warning could have been given and acted on in the time available without considering the time necessary "for visualization of the perilous situation, realization of danger, determination upon a cause of action, and for the muscular system to act." The same general objection now being asserted was decided against the appellants on the former appeal and is the law of the case unless the decision in that appeal was induced by a mistake of law or of fact so as to cause injustice. [Ducoulombier v. Thompson, 343 Mo. 991, 124 S. W. (2d) 1105; Dunn v. Alton Ry. Co., 340 Mo. 1037, 104 S. W. (2d) 311.] As to the law announced on this contention, we said in our former decision: "Under the facts in the present case, we think it was a question of fact as to whether or not the engineer saw or by the exercise of ordinary care should have seen plaintiff approaching the track and oblivious of his peril, in time to have thereafter sounded a warning of the approach of the train, so plaintiff could have stopped

before reaching the path of the overhang of the pilot. A warning could have been sounded 'in a second or the fraction of one' (Chawkley v. Wabash Ry. Co. et al., 317 Mo. 782, 297 S. W. 20, l. c. 27), and had a warning been given at any time before plaintiff got so near the path of the overhang that he could not stop, the collision might have been avoided, and such questions were, we think, for the jury. Defendants' demurrer to the evidence was properly refused." Appellants quarrel with the use of the quotation from the Chawkley case that a warning could have been sounded in a second or a fraction of one. In that case and in the above decision that statement referred to the time for the mechanical action of blowing the whistle, to be considered with other evidence, and was used *arguendo*. In addition we now have the testimony of the engineer that his hand was resting on the whistle cord prior to the accident. This the jury may consider while rejecting other testimony of the witness. [Gould v. C., B. & Q. Ry., 315 Mo. 713, 290 S. W. 135.]

The facts now before us are practically the same as those which furnished the basis of our above holding. It is conceded that the evidence on the second trial was substantially the same as that produced at the first trial except that appellants introduced, for the first time, expert testimony on what they describe as the "psychophysical phenomena of reaction time." They say it is this additional testimony that changes the picture. Their expert testified as to the minimum time it would take, in his opinion, for the engineer to visualize and appreciate respondent's peril, determine to sound a warning and commence to act, for the sound to reach respondent's ears, for respondent to hear the warning, appreciate the danger and decide to stop or turn aside his car. Because of this testimony appellants argue that the factual situation now differs from what it was on the first appeal so as to require a finding as a matter of law that there was not sufficient time for an effective warning and therefore no submissible case. We cannot agree with this argument. We decided on the first appeal that whether an effective warning could be given under the circumstances of this case was a fact to be determined by the jury. This additional evidence merely goes to controvert the evidence under which the jury might find such fact and is all to be considered by the jury. The jury were fully and precisely instructed to consider this evidence before finding the fact in question. This is a close case. We have already decided it is a submissible one and under our decisions, finding no mistake of fact or law, we are bound by that decision on this appeal.

■ Appellants assert errors in the instructions. They first attack the giving of respondent's Instruction No. I which was as follows: "The Court instructs the jury that all alleged grounds of recovery other than as hereinafter submitted in this instruction are by the Court withdrawn from your consideration; and if you

believe from the evidence that plaintiff Frank Kick was not guilty of any act or omission which was the sole cause of said collision and alleged injuries, and that at said time and place defendants by their engineer Buhalt operated said westbound train on said north tracks, if so, and that said crossing at and long prior to said time was habitually and greatly used by vehicles and the general public with the knowledge and acquiescence of the Wabash Railway Company, the defendants, and said engineer, if so, and that as said train approached and neared said crossing said automobile and plaintiff were moving toward said tracks *and immediately coming into and were in a position of imminent peril and danger* of being struck and injured by said train, if so, and that plaintiff was oblivious of such peril and the proximity of such danger, if so, and that it would have been apparent to a reasonably careful and prudent engineer, by using ordinary care and similarly situated and under similar circumstances, that plaintiff would continue forward and drive upon said tracks and be struck and injured by said train if no timely warning of the proximity of such danger was given, if so, and that said engineer knew or by the use of ordinary care would have known all the above facts, if you so find them to be the facts, when he was far enough east of said crossing and in time thereafter by using ordinary care and the means at hand and with safety to said train and those on it to have given efficient and timely warning of such danger and the proximity thereof, if so, and have thereby caused plaintiff to stop before his car reached the path of said train, if so, and that had plaintiff been timely so warned, if you find he was not, he could and would have so stopped, if so, and that after plaintiff was in imminent peril, if so, as aforesaid, said engineer gave no timely warning and then and there failed to use ordinary care to timely warn plaintiff as aforesaid, if so, and that said engineer was thereby negligent, if so, and that as a direct result of his aforesaid negligence, if any, said train struck said car and plaintiff was thereby injured, if so, then your verdict must be for plaintiff Frank Kick, and this is the law and is true, if you should also believe that any act or omission, if any, of Frank Kick directly contributed to him getting into such danger, if any, at said time and place.''

The use of the words *"immediately coming into"* in connection with a position of imminent peril is criticized on the basis of our decision in the case of Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S. W. (2d) 961. There we held that in a humanitarian case an instruction which imposed a duty on a defendant while a plaintiff was only *approaching* a position of imminent peril was reversible error because the defendant's duty does not arise *until* a situation of imminent peril arises. The humanitarian doctrine requires a defendant to act when he sees or should see a plaintiff in a position of imminent peril only. To extend the scope of that duty so as to in-

clude the time when a plaintiff is *approaching* or *coming into* a position of imminent peril is placing upon a defendant a greater liability than the law imposes. The instruction in the case at bar does not offend the rule in this respect. It will be noticed that the words *immediately coming into* a position of peril were used only in the first part of the instruction. The instruction, however, did not impose any duty on the appellants until *after* the plaintiff was in imminent peril. No action on the part of the engineer was required until after the plaintiff was in imminent peril. Therefore, while we severely condemn the use of the words *immediately coming into* in the first part of the instruction and hold that they should not be used in any part of an instruction we do not conclude that these words when read with the balance of the instruction and when considered with the facts of this case, constitute reversible error. We repeat for emphasis that since no duty is imposed until imminent peril exists it is reversible error to exact a duty of another before a person is in such a situation and is only *approaching, entering,* or *coming into* a position of imminent peril.

■ This instruction is also attacked on the assertion that the last phrase, ''. . . and this is the law and is true, if you should also believe that any act or omission, if any, of Frank Kick directly contributed to him getting into such danger . . .'', conflicts with appellants' sole cause instruction. This cannot be so because the negligence here referred to is limited only to *contributory* negligence. Furthermore, the issue of respondent's sole cause is also presented in the beginning of the very instruction under attack and this phrase complained of, contained in the same instruction, is in harmony. Therefore, the holding in Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47, is not in point. Moreover, in that decision we again restated the established doctrine that such negligence of a plaintiff which only contributes to his injury does not defeat his recovery under the humanitarian doctrine.

■ Instruction No. IV, given for respondent, is also attacked. It is: ''The court further instructs the jury regarding the use of the term 'sole negligence,' as used in instructions herein, that this means negligence or fault on the part of plaintiff, *without any concurring or contributing negligence of defendants whatever, as submitted in the instructions herein and if Buhalt was guilty of any negligence whatever, as submitted in the instructions herein, which directly contributed to said collision,* then you cannot find such issue of sole negligence against plaintiff, Frank Kick, but on the contrary your finding upon such issue, the issue of sole negligence, under said instructions should be in favor of plaintiff, Frank Kick, and against the defendants.'' The attack is aimed at the italicized portion which appellants claim must be specially considered in connection with respondent's Instruction No. II, which is: ''The court instructs the

jury by the term 'ordinary care' as used in these instructions, as to defendants, is meant such care as would usually be used by ordinarily careful and prudent persons under the same or similar circumstances, and the term 'negligence' or 'negligent,' as to defendants, means failure to use such ordinary care."

Appellants say that by these instructions the jury was given a roving commission to consider on the issue of sole cause "any concurring or contributory negligence of defendants." This is not the case. The negligence to be considered is limited expressly by the very instruction itself to such negligence "*as was submitted in the instructions herein.*" We do not approve the form of this instruction. It would have been clearer had the negligence charged against Buhalt, the engineer, been specified. But when read with plaintiff's Instruction No. I it was not fatally erroneous. Appellants argue that the decision in Morris v. Seitrich (Mo. App.), 118 S. W. (2d) 46, is directly in point. However, we find a decided variance because in that case the instruction, which was otherwise similar, after limiting the negligence to be considered to that defined in other instructions, contained the added provision ". . . *or* by the negligence of the defendant contributing with negligence on the part of Elvera Hartwig, if any . . ." It is apparent that such instruction went beyond the limits of the negligence charged in the other instructions and the court very properly held that it should not have been given.

█ The next complaint by the appellants is on the refusal of a withdrawal instruction. Before the case was tried the second time, respondent filed an amended petition in the trial court alleging negligence under the humanitarian doctrine for failure to warn and for failure to slacken. Counsel for respondent in his opening statement told the jury that the evidence would show that the engineer never slackened his speed in the slightest. Upon objection counsel pointed out that, under the amended petition, slackening was still an issue in the case, that the prior reversal was based on other evidence as to this issue, and inferred that there would be evidence to sustain the charge. This was the only reference to this charge. However, no such evidence was offered and the jury were instructed at the request of the respondent in Instruction No. I, supra, that all alleged grounds of recovery other than those submitted in that instruction were withdrawn. The instruction then submitted only the failure to warn. Appellants then offered two withdrawal instructions. One sought to withdraw the charge on failure to warn. For obvious reasons they do not complain of the refusal of that instruction. The other asked the charge for failure to slacken be withdrawn. They do complain because of the refusal of this instruction. There is no merit in their contention. This issue was never presented to the jury and any question of the good faith of counsel in mentioning it in the opening statement is for the discretion of the trial court. Like-

wise, the giving of a withdrawal instruction is discretionary and there is no basis here for any charge that such discretion has been abused.

We come now to the amount of the verdict which was for $30,000. Appellants say it is excessive. At the time of his injuries in 1932, respondent was thirty-five years old. He was working as a stationary engineer at 60 cents an hour and averaged ten hours a day. His injuries were shown to be permanent. Since that time his only work has been on a W. P. A. project for crippled people, making $15 a week. The loss of earnings submitted to the jury amounted to $11,000. Medical expense amounted to $4000. Damage to his automobile was $200. If it was the intention of the jury to allow these amounts in full, then the sum of $14,800 was allowed for his injuries. Respondent's right arm received multiple fractures, has been permanently shortened and the right hand has been impaired. He suffered multiple fractures of the left leg. The bones had protruded through the flesh into the dirt and had become infected and would not heal. After several operations there is still a lack of union in this leg. It is shortened about four inches and will bear no weight. His skull was fractured, resulting in a deformity. He suffers from double vision and trouble with his eyes. They fail to coordinate. His hearing has been damaged. He suffers from pains in his head. According to the evidence, his injuries are permanent. He was first in the hospital for about four months. He reentered the hospital about a year after he was injured for another operation on his leg in an attempt to unite the fracture, but it was unsuccessful and a future operation is advised. He was first treated by a doctor on the staff of the railroad who testified about his injuries, as did other doctors, and that he was severely and permanently injured. Appellants offered no medical testimony whatever. It is our opinion that the amount allowed him was not excessive. In a case where the injuries and the loss were less, we approved an award of $25,000. [Cotton v. Ship-by-Truck Co., 337 Mo. 270, 85 S. W. (2d) 80.]

The judgment of the circuit court is affirmed. All concur.